AO 91 (Rev. 5/85) Criminal Complaint AUSA Robin S. Rosenbaum FBI S/A Dan Tejada

# United States District Court

SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

V.

JANET MADURO-POLANCO

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 00-4048-SNOW

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From on or about January 22, 1998, through on or about January 4, 1999, in Broward and Dade Counties, in the Southern District of Florida,

defendant knowingly made false statements on loan applications, for the purpose of influencing the actions of institutions the accounts of which were insured by the Federal Deposit Insurance Corporation, and knowingly executed a scheme to defraud a financial institution, the accounts of which were insured by the Federal Deposit Insurance Corporation,

in violation of Title 18, United States Code, Sections 1014 and 1344.

I further state that I am a(n) Special Agent with the FBI and that this complaint is based on the following
                                       Official Title
facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached and made a part hereof:   [x] Yes   [ ] No

_____
Signature of Complainant

Sworn to before me, and subscribed in my presence,

March 6, 2000                                             at  Fort Lauderdale, Florida
Date                                                         City and State

LURANA SNOW
CHIEF UNITED STATES MAGISTRATE JUDGE              _____
Name and Title of Judicial Officer                    Signature of Judicial Officer

## AFFIDAVIT

I, Daniel Tejada, being duly sworn, depose and state:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have served in this capacity for approximately fourteen years. During this time, I have conducted various criminal investigations, including investigations into, among other crimes, bank fraud and false statements, in violation of Title 18, United States Code, Sections 1344 and 1014.

2. I have a Bachelor of Science degree in Education from City College in New York. I also have a Master of Arts degree in Education from Western Kentucky University. Additionally, I completed one year of post-Masters work in Education at the University of Utah. For my position as a Special Agent with the FBI, I have successfully completed training at the FBI Academy at Quantico, Virginia. I have also participated in in-service and on-the-job training in the area of investigating white collar crime.

3. I have conducted numerous investigations. During the course of my employment with the FBI, I have conducted investigations utilizing surveillance techniques, interviewing third parties, executing search warrants, and executing arrest warrants.

4. I have been working on a criminal investigation with other agents from the FBI. The information detailed below comes from information provided to me by the federal law enforcement personnel involved in this investigation and my own personal investigation. Since this affidavit is being submitted for the limited purpose of providing probable cause for an arrest, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for the issuance of the

complaint and arrest warrant.

5. Janet Maduro-Polanco worked as an "in-store" associate for NationsBank at a Miami Winn-Dixie Supermarket from November 19, 1996, through September 19, 1998. NationsBank was a federally insured financial institution at the time, whose deposits were insured by the Federal Deposit Insurance Corporation. Without his permission or knowledge, on January 22 and 23, 1998, Maduro-Polanco took out two loans in the name of NationsBank customer Andrew J. Tomaskovic: one for $25,000.00, and one for $1,000.00. NationsBank records show that associate M39, Maduro-Polanco's associate number, processed the loan application. Additionally, the loan application lists Tomaskovic's address as 12501 SW 90th Avenue, Miami, Florida. This address, however, was where Maduro-Polanco lived. Tomaskovic has stated that he never applied for nor authorized Maduro-Polanco to apply for the loans in question. Bank records show that the bank lost $21,844.43 on the first loan and $796.65 on the second loan.

6. Additionally, while Maduro-Polanco was employed by NationsBank, she made false loan applications to a Bank Atlantic branch in Broward County. Bank Atlantic was a federally insured financial institution at the time, with its deposits insured by the Federal Deposit Insurance Corporation. In the first application, filed on August 12, 1998, Maduro-Polanco applied for a small business loan and line of credit ($50,000.00 each, for a total of $100,000.00) in the name of Janet M. Polanco, doing business as J.M. Polanco Sales. On this application, Maduro-Polanco falsely stated that she owned a company called J.M. Polanco Sales, that the address of J.M. Polanco Sales was 19244 Cloister Lake Lane, Boca Raton, Florida 33498, that she had spent ten years in the textile distribution industry, that the total business revenues of J.M. Polanco Sales was $1,003,944.00 during 1997, that the net profit of J.M. Polanco Sales was $163,391 in 1997,

that she received compensation in the amount of $150,000.00 from J.M. Polanco Sales in 1997, that the net worth of J.M. Polanco Sales was $240,249 in 1997, that J.M. Polanco Sales had total assets of $269,693 in 1997, that J.M. Polanco Sales had $65,064 in cash in 1997, and that she had a net worth of $708,500.00.

7. Besides the fact that Maduro-Polanco was working as a teller for NationsBank during 1997, numerous other pieces of evidence demonstrate that Maduro-Polanco's statements on this application were false. First, Maduro-Polanco's sworn financial affidavit filed in state court in Dade County in a child support action shows that Maduro-Polanco states that her gross earned income for 1997 was $38,185.87. Second, the state of Florida has no record of J.M. Polanco Sales, and the taxpayer identification number Maduro-Polanco provided for this alleged company is identical to her own. Third, Carmina Ramirez owned the house located at the address identified in the loan application as the place of business for J.M. Polanco Sales. Ms. Ramirez knows Maduro-Polanco, and she has stated unequivocally that the house was never used as a business location or to house J.M. Polanco Sales or Maduro-Polanco. Indeed, in 1997, when Maduro-Polanco claimed to work out of the house, Ms. Ramirez herself was actually living there until September, at which time she moved out and rented the house to others to earn extra income. Fourth, Ms. Ramirez and Maduro-Polanco's step-father, who does own a textile company (which is not called J.M. Polanco Sales), both stated that Maduro-Polanco never worked in the textile industry. Fifth, the loan officer who accepted Maduro-Polanco's application and originally claimed in her review of that application that she had visited Maduro-Polanco's place of business admitted in an FBI interview that she had never actually visited Maduro-Polanco's place of business.

8. Once Maduro-Polanco obtained the small business loan and line of credit, she used approximately $98,884.00 of the loan and line of credit. On December 29, 1998, Maduro-Polanco then wrote a worthless Discover Check for the amount of $50,000.00 to "pay back" the loan. Before the bank realized that the Discover check was worthless, Maduro-Polanco withdrew funds in excess of the loan and line of credit, for a total loss to Bank Atlantic of approximately $134,727.67.

9. Based on the false representations in Maduro-Polanco's small business loan application, Bank Atlantic found Maduro-Polanco eligible for a home equity loan for $60,000.00 and authorized such a loan on November 4, 1998, using the Cloister Lake Lane address. Bank records reflect that Maduro-Polanco used approximately $59,750.00 of the loan. On December 29, 1999, she then wrote and deposited a worthless Discover check for $60,217.89, purporting to pay the loan back. Before the bank determined the check to be worthless, however, Maduro-Polanco withdrew funds in excess of the home equity loan, for a total loss to the bank of approximately $117,819.04.

10. Based on my discussions with Maduro-Polanco's ex-husband, Domingo Polanco, it appears as though Maduro-Polanco fled Venezuela following a police inquiry by the Judicial Technical Police of Venezuela into irregularities discovered at Citibank allegedly resulting from Maduro-Polanco's previous employment with that banking institution. I am presently following up on this information.

11. My investigation has revealed that Maduro-Polanco has since left Florida, and she is currently living in the Boston area. Maduro-Polanco is now working at Metro West Bank in Framingham, Massachusetts.

12. Based on the allegations stated above, there is probable cause to believe that Janet Maduro Polanco has committed violations of Title 18, United States Code, Sections 1344 and 1014.

FURTHER AFFIANT SAITH NOT.

_____
Daniel H. Tejada
Special Agent
Federal Bureau of Investigation

Subscribed to and sworn to me this 6th day of March, 2000.

_____
LURANA S. SNOW
CHIEF U.S. MAGISTRATE JUDGE